Case No. 25-10567

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

LEIGH HOLLAND,
Plaintiff – Appellant

v.

TEXAS CHRISTIAN UNIVERSITY,
Defendant – Appellee

Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
No. 4:24-cv-00289-O

_____

## BRIEF OF APPELLEE

_____

Eva W. Turner
Molly Ann Lawrence
**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
8117 Preston Road, Suite 500
Dallas, TX  75225
Telephone: (214) 987-3800

**Attorneys for Appellee
Texas Christian University**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

- Leigh Holland (Plaintiff-Appellant);

- W.D. Masterson, Kilgore & Kilgore, PLLC (counsel for Plaintiff-Appellant);

- Texas Christian University (Defendant-Appellee);

- Eva W. Turner and Molly Ann Lawrence, Ogletree, Deakins, Nash, Smoak & Stewart, P.C. (counsel for Defendant-Appellee).

_s/Molly Ann Lawrence_
MOLLY ANN LAWRENCE

**Attorney of record for Appellee**
**Texas Christian University**

## STATEMENT REGARDING ORAL ARGUMENT

In accordance with Federal Rule of Appellate Procedure 34(a)(1) and Fifth Circuit Rule 28.2.3, Defendant-Appellee Texas Christian University ("TCU") respectfully submits that oral argument is not needed in deciding this case because no novel or complicated issues are presented. This appeal involves the grant of summary judgment based on the undisputed record, and the District Court's correct application of well-settled law. The briefs and the record are sufficient to affirm the District Court's ruling.

If the Court grants Plaintiff-Appellant Leigh Holland's ("Holland") request for oral argument, TCU asks that it be permitted equal time to argue the merits of its case.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS ......................................................................................... iv

TABLE OF AUTHORITIES ................................................................................... v

I.  STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................. 1

II.  STATEMENT OF THE CASE .......................................................................... 1

    A.  Statement of Material Facts ........................................................................ 1

    B.  Relevant Procedural History ..................................................................... 10

    C.  Ruling Presented For Review .................................................................... 11

III.  SUMMARY OF ARGUMENT ....................................................................... 12

IV.  ARGUMENTS AND AUTHORITIES ............................................................ 15

    A.  Standard of Review. ................................................................................... 15

    B.  The District Court Correctly Held That Holland Was Not Entitled
        to FMLA Leave and Therefore Cannot Succeed on Any FMLA
        Claim ......................................................................................................... 17

    C.  TCU Did Not Interfere with Holland's FMLA Leave Because It Is
        Undisputed That She Received All of the Leave She Requested ............ 25

    D.  Holland's Claim of FMLA Discrimination and Retaliation Fails
        Because She Cannot Establish a Causal Connection or
        Demonstrate Pretext. ................................................................................ 27

V. CONCLUSION ................................................................................................... 35

CERTIFICATE OF SERVICE .............................................................................. 36

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ...................................... 37

ADDENDUM 1: REGULATIONS CITED IN THE BRIEF.................................38

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*AG Acceptance Corp. v. Veigel*,
    564 F.3d 695 (5th Cir. 2009) ...................................................... 21-22

*Amburgey v. Corhart Refractories Corp., Inc.*,
    936 F.2d 805 (5th Cir. 1991) ............................................................ 32

*Amsel v. Tex. Water Dev. Bd.*,
    464 F. App'x 395 (5th Cir. 2012) ..................................................... 28

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................... 15-16

*Bell v. Dallas Cnty.*,
    432 Fed. App'x 330 (5th Cir. 2011) (per curiam) ............................ 26

*Blakley v. Golabs, Inc.*, No. 3:21-cv-2422-L,
    2022 U.S. Dist. LEXIS 154936 (N.D. Tex. July 8, 2022) ................. 20

*Bocalbos v. Nat'l Life Ins. Co.*,
    162 F.3d 379 (5th Cir. 1998) ..................................................... 14, 17

*Brinsdon v. McAllen Indep. Sch. Dist.*,
    863 F.3d 338 (5th Cir. 2017) ...................................................... 31-32

*Caldwell v. KHOU-TV*,
    850 F.3d 237 (5th Cir. 2017) ..................................................... 17, 23

*Chaffin v. John H. Carter Co., Inc.*,
    179 F.3d 316 (5th Cir. 1999) ........................................................... 27

*Chapman v. Dallas Morning News, L.P.*, No. CIV.A.3:06-CV-2211B,
    2008 WL 2185389 (N.D. Tex. May 27, 2008) .................................. 34

*Cole v. Sisters of Charity of the Incarnate Word*,
    79 F. Supp. 2d 668 (E.D. Tex. 1999) .............................................. 20

*Davis v. Fort Bend Cnty.*,
    765 F.3d 480 (5th Cir. 2014) ........................................................... 16

*Dean v. Methodist Hosps. of Dall., Inc.*, No. 98-11498,
　1999 U.S. App. LEXIS 39142 (5th Cir. 1999) ................................ 20

*Durose v. Grand Casino of Miss., Inc.*,
　251 F. App'x 886 (5th Cir. 2007) ...................................... 25

*Feist v. Louisiana*,
　730 F.3d 450 (5th Cir. 2013) ......................................... 31

*Fontenot v. Upjohn Co.*,
　780 F.2d 1190 (5th Cir. 1986) ........................................ 16

*Forsyth v. Barr*,
　19 F.3d 1527 (5th Cir. 1994) ..................................... 16, 32

*Garcia v. Penske Logistics, L.L.C.*,
　631 F. App'x 204 (5th Cir. 2015) (per curiam) ................... 30

*Garcia v. Pro. Cont. Servs., Inc.*,
　938 F.3d 236 (5th Cir. 2019) ......................................... 30

*Goree v. Comm'n Lincoln Park. Det. Ctr.*,
　437 F. App'x 329 (5th Cir. 2011) .................................... 34

*Hunt v. Rapides Healthcare Sys., LLC*,
　277 F.3d 757 (5th Cir. 2001) .................................. 27-28, 31

*Johnson v. Dallas ISD*, No. 3:08-CV-2215-O,
　2011 U.S. Dist. LEXIS 172009 (N.D. Tex. March 7, 2011) ......... 20

*Keenan v. Tejeda*,
　290 F.3d 252 (5th Cir. 2002) ......................................... 22

*Ladner v. Hancock Medical Center*,
　299 F. App'x 380 (5th Cir. 2008) .................................... 23

*Lawrence v. Fed. Home Loan Mortgage Corp.*,
　808 F.3d 670 (5th Cir. 2015) ......................................... 15

*Laxton v. Gap, Inc.*,
　333 F.3d 572 (5th Cir. 2013) ......................................... 33

*Lindsey v. Bio-Medical Applications of La., L.L.C.*,
　9 F.4th 317 (5th Cir. 2021) .......................................... 32

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (per curiam) ................................................................. 16

*Little v. Republic Refining Co.*,
    924 F.2d 93 (5th Cir. 1991) ............................................................... 29

*Lopez v. Tex. Christian Univ.*, No. 4:22-cv-00171-O,
    2022 U.S. Dist. LEXIS 142304 (N.D. Tex. Aug. 10, 2022) ............ 26

*Martin v. Penske Logistics, LLC*, No. 3:23-cv-0574-B,
    2024 U.S. Dist. LEXIS 98829 (N.D. Tex. June 24, 2024) .......... 14-15

*Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*,
    826 F.3d 1149 (8th Cir. 2016) ...................................................... 26-27

*Mauder v Metro Transit*,
    446 F.3d 574 (5th Cir. 2006) ...................................................... 18, 28

*Mayberry v. Vought Aircraft Co.*,
    55 F.3d 1086 (5th Cir. 1995) ............................................................. 29

*McCollum v. Puckett Mach. Co.*,
    628 F. App'x 225, *4 (5th Cir. 2015) (per curiam) (per curiam) .................... 26

*McDaniel v. Nat'l R.R. Passenger Corp.*,
    705 F. App'x 240 (5th Cir. 2017) ..................................................... 34

*Miller v. Metrocare Servs.*,
    809 F.3d 827 (5th Cir. 2016) ............................................................. 16

*Minard v. ITC Deltacom Commc'ns, Inc.*,
    447 F.3d 352 (5th Cir. 2006) ...................................................... 18, 24-25

*Murray v. Red Kap Indus., Inc.*,
    124 F.3d 695 (5th Cir. 1997) ...................................................... 19-20

*Owens v. Excel Mgmt. Servs., Inc.*, No. CIV A. 3:02-CV-0835,
    2004 WL 358153 (N.D. Tex. Feb. 13, 2004) .................................. 33

*Park v. Direct Energy GP, L.L.C.*,
    832 F. App'x 288 (5th Cir. 2020) .................................................... 26

*Pioneer Exploration, LLC v. Steadfast Ins. Co.*,
    767 F.3d 503 (5th Cir. 2014) ............................................................. 16

*Ragas v. Tenn. Gas Pipeline Co.*,
    136 F.3d 455 ........................................................................................... 15

*Redoux v. Via Metro. Transit, No. SA-*
    08-CA-799-OG, 2009 U.S. Dist. LEXIS 136783 (W.D. Tex. July 30, 2009) .. 25

*Reeves v. Sanderson Plumbing Prods.*,
    530 U.S. 133 (2000) ........................................................... 27-28, 31

*Richardson v. Monitronics Intern., Inc.*,
    434 F.3d 327 (5th Cir. 2005)............................................................. 32

*Spindle v. CKJ Trucking, LP*,
    2020 WL 1283519 (E.D. Tex. March 18, 2020) ............................................. 22

## Statutes or Other Authorities

29 U.S.C. § 2612 ...................................................................... 13, 17, 19

29 C.F.R. § 825.113 ...........................................10-11, 13, 17, 18, 38, 39

29 C.F.R. § 825.114 ...........................................17, 19, 38, 40

29 C.F.R. § 825.115 ...........................................13, 14, 18, 21, 23, 38, 41

29 C.F.R. § 825.220 ...........................................25-26, 38, 43

## I.  STATEMENT OF ISSUES PRESENTED FOR REVIEW

Did the District Court correctly grant summary judgment in favor of TCU,

holding that Appellant was not entitled to Family and Medical Leave Act ("FMLA")

leave as a matter of law because (i) she did not receive inpatient care and there is no

evidence that her mental health caused her any period of incapacity, and (ii) the

undisputed evidence establishes that Holland explicitly disclaimed detrimental

reliance?

## II.  STATEMENT OF THE CASE

**A.     Statement of Material Facts.**

The District Court rejected Holland's FMLA claims because it correctly

concluded she was not entitled to FMLA leave in the first place. ROA.1056-1060.

This Court can and should affirm the decision for the same reason. However, because

there are alternate grounds for affirming the decision, TCU presents facts relevant

to those grounds here.

### 1.     TCU Establishes Its Office of Institutional Equity.

TCU is a private institution of higher education located in Fort Worth, Texas.

ROA.614. It maintains written workplace policies intended to ensure coordinated

compliance with applicable laws and regulations while promoting operational

efficiencies. ROA.614. Among these are its Leaves of Absence Policy, which

contains important guidelines regarding FMLA leave. ROA.614. TCU's core values

are integrity, engagement, community (including serving one another with openness, trust, humility, and mutual respect), and excellence. ROA.614.

TCU created its Office of Institutional Equity (the "OIE") in September 2020. ROA.615. The OIE addresses and responds to Title IX allegations regarding discrimination, harassment, retaliation, and sexual misconduct. ROA.593. Sharon Gooding, M.Ed., Esq., has been the Director of the OIE since its inception in 2020. ROA.593. According to Holland, Gooding is a micromanager who had high, but reasonable, expectations for Holland's work performance. ROA.484-88. Holland did not enjoy working under Gooding. ROA.485. She alleges the two had very different working styles: Holland describes herself as an extroverted "people person" whose work style is "working freely, having the autonomy to make clear and concise decisions, and to try to have fun []." ROA.490. By contrast, "[Gooding's] work style is just to work." ROA.490. Holland perceives Gooding as an introverted "policy and procedure person" who had difficulty understanding Holland's work style. ROA.490-91. Nonetheless, Holland believes Gooding was good in the role of the OIE Director; Holland had no concerns or frustrations with Gooding's performance and does not think Gooding ever treated her unfairly. ROA.489, 486.

### 2.     Holland's Unsatisfactory Job Performance.

In the period leading up to her leave, Holland worked as an Investigator in the OIE. ROA.501. Her duties and essential job functions included thorough

investigation of allegations of harassment, discrimination, sexual misconduct, and retaliation. ROA.567, 501-02. An Investigator must timely conduct and memorialize witness interviews, make credibility assessments, and prepare and present her findings. ROA. 482, 489, 567-68, 501-02, 615-16.

The role of the OIE Investigator is very important at TCU. ROA.488, 515. Because Title IX complaints involve serious, sensitive allegations and can result in significant consequences for any person who alleges or is accused of misconduct, it is critical that an Investigator fully grasp the entirety of the situation at issue in the complaint and timely finalize the investigation. ROA.488, 482. Investigators must pay close attention to detail, and investigations must be thorough. ROA.481. It can be problematic if an Investigator does not investigate or uncover an important detail when reviewing a complaint. ROA.488. OIE investigation reports must also be thorough and of excellent written quality, and, given the sensitivity of Title IX complaints, it was an important function of Holland's job to deliver such reports in a timely manner. ROA.488-89, 481-82. Further, Investigators must interact well with various staff from other TCU offices, respond to students in a timely manner, maintain neutrality in investigations, and ensure students feel the Investigator is impartial. ROA.479-480, 482-83. Holland admitted it would an appropriate cause for concern if students reported that an Investigator was not responsive to them. ROA.482-83.

During the relevant time period, Gooding noticed that Holland exhibited certain performance deficiencies. ROA.593-94. Holland's writing in investigation reports and related correspondence was not of high quality and she exhibited insubordinate behaviors, including disrespectful communications to Gooding and others. ROA.593-94, 507. Holland also failed to make herself available for meetings Gooding required, despite knowing the meetings were important to Gooding. ROA.594, 491-92. According to Gooding, Holland was a negative influence on the OIE office environment: at least one of Holland's coworkers was afraid of upsetting her, and Holland allegedly "bullied" others into doing her work. ROA.595, 559-560. Gooding received feedback from various TCU personnel outside of the OIE that Holland's work product was substandard, she was difficult to work with, and students complained about her performance as an Investigator – including that she was not responsive to them. ROA.594, 510-514.

On March 8, 2022, Holland called a meeting with Gooding and Aisha Torrey-Sawyer, who was Gooding's supervisor and Holland's close friend. ROA.594. According to Holland, Gooding recently "called her out" in front of her colleagues for not paying attention during a meeting, and Holland felt embarrassed. ROA.497-98, 594. In Gooding's view, Holland was extremely disrespectful to Gooding during the conversation with Torrey-Sawyer. ROA.594. According to Holland, the March 8 meeting caused a marked shift in the OIE workplace: after the meeting, Gooding

became distanced and the entire office felt strained. ROA.503-06. As a result of the March 8 meeting, Gooding informed Holland she was concerned about their "continued inability to effectively communicate with one another" and instructed Holland that they must "work on minimizing conflict with one another" and "improv[e] our communication." ROA.565, 594-95, 604. However, Holland did not follow through. According to Holland, "it just remained the same." ROA.500, 594-95.

### 3. Holland Takes Approved Leave in 2022 With No Issues Whatsoever.

Holland requested and received approval from TCU for a period of FMLA leave from May 4 to July 4, 2022, related to surgery on her wrist. ROA.528, 616. Holland provided appropriate medical documentation to TCU confirming the surgery and related recovery period. ROA.547, 616. Holland took the full amount of FMLA leave she requested, and she returned to the same position, duties, and pay as she held prior to her leave without negative action or any other issue upon her return. ROA.554, 595, 616.

### 4. Holland Takes Approved Leave in 2023.

Holland left work early on February 17, 2023. ROA.595, 526. She reports she was crying; however, she did not need to go to the hospital or be sedated. ROA.526, 546. Thereafter, she submitted a note from her counselor/"Master Life Coach," Moses Chism, Jr., Ph.D. (LPC-S), stating to excuse Holland "from 2/17/23 until

further notice. She is currently in my care undergoing mental health evaluation." ROA.570, 617, 642. TCU did not discourage Holland from taking time off from work or discipline her for doing so. ROA.596, 618, 560. To the contrary, as Holland admits, Gooding was supportive of Holland taking time away from work. ROA.525, 539, 571-72, 596. For instance, when Gooding did not hear from Holland the following workweek, Gooding asked a leave administrator from TCU's Human Resources department to connect with Holland to offer assistance. ROA.596. Thereafter, Holland was permitted to take excused leave retroactive to February 17, 2023. ROA.596, 617. TCU made no effort to restrict or interfere with Holland's request for leave or her leave period in any way. ROA.542, 596.

**Critically, during her leave period, Holland did not receive inpatient care and was not incapacitated in any way**. ROA.474, 476, 534, 546. She was able to care for herself, leave the house, go on walks, drive, maintain normal social behavior, communicate with friends, eat, drink, shower, sleep, and focus or function enough to perform work for at least one of her side businesses. ROA.474, 539-40, 542-44, 715. The way Holland describes it, she simply wasn't her "chipper, cheery self" and was "just sad, weepy." ROA.533, 530-31, 473. She does not recall how often she cried – at most, she estimates it was "very sporadic." ROA.474-75. Moreover, she unequivocally testified that she was able to perform her job duties in the weeks leading up to her leave and could have continued to perform the duties of

her job during her time off. ROA.533-35, 544. She took leave "to reset" so she "could be a better person." ROA.532-33.

**It is undisputed that Holland remained able to perform the duties of her job the entire time she was on leave.** ROA.535, 544. She herself admitted, "*I was able to do my job. It wasn't stopping me. I mean, my mental health didn't stop me from doing the actual job.*" ROA.535 (emphasis added). Chism agreed. ROA.581. He, too, testified that Holland was able to perform her job duties for the duration of the leave period: "*Ms. Holland never was not able to do her job.*" ROA.587 (emphasis added).

Contrary to Holland's new representations on appeal, Chism did not diagnose Holland with depression before or during her 2023 FMLA leave; rather, he evaluated her symptoms and suggested she see another doctor to obtain a diagnosis. ROA.478, 586, 588. Holland admits that no other doctor diagnosed her with depression. ROA.476. Chism opined that Holland was "burnt out" and needed to learn better boundaries and positive life skills. ROA.584, 587. He does not recall recommending that Holland take time off from work. ROA.584.

Holland testified that she was sufficiently rested such that she was willing to return to work by early April 2023 (though she did not actually return until May). ROA.541. Notably, Holland alleges she presently experiences the symptoms that

caused her to take leave in 2023, yet she is employed full time and is not on leave. ROA.531, 522-23.

**Finally, it is important to note that Holland would have taken the February 17, 2023 – May 1, 2023 time away from work irrespective of whether she received approval for FMLA leave**. ROA.536.

5.    **Gooding Learns More About Holland's Poor Job Performance and Negative Impact on the OIE and Decides to Terminate Her Employment.**

A number of negative revelations about Holland came to light during her leave. First, TCU discovered she failed to conduct a thorough investigation of a report about a faculty member, with significant negative consequences to TCU. ROA.596, 619. Because Holland did not investigate the report in the diligent manner expected of her and any Investigator, the faculty member accused in the report received tenure in the interim, which made TCU's process of separating the faculty member after the formal investigation more difficult and expensive. ROA.596, 619. TCU made a similar discovery during Holland's leave on another OIE case, too: Holland should have conducted certain interviews in the case, but there was no work in her files. ROA.596, 619.

Furthermore, one of Holland's OIE coworkers reported to Gooding during Holland's leave that the coworker did not know if she could "take it" when Holland returned to work. ROA.596-97. She specifically told Gooding she was thinking

8

about quitting if Holland returned to the office because of Holland's bullying tactics. ROA.596-97. In view of this compelling feedback, Gooding's existing and newly increased performance concerns about Holland, and Gooding's observations that the OIE environment significantly improved in Holland's absence, Gooding made the decision to discharge Holland from employment. ROA.596-97, 555-57.

### 6.   Holland Returns to Work, Is Informed of TCU's Discharge Decision, and Chooses to Retire Immediately.

Holland took the full amount of leave she requested and returned to work without restrictions on May 2, 2023. ROA.562, 575, 617-18, 597.

On May 2, 2023, Gooding and Chief Human Resources Officer Yohna Chambers-Hastings met with Holland to deliver the separation decision. ROA.597, 620-21. Chambers-Hastings informed Holland that TCU was terminating her employment and her last day would be June 2, 2023. ROA.620-21. According to Holland, Gooding "started talking about conflict in the office and, 'We want somebody here that wants to be here. We're going in a different direction.'" ROA.519. Although TCU planned to allow Holland to retire on June 2, Holland requested to retire effective immediately. ROA.520, 620-21.

### 7.   TCU Terminated Holland's Employment Because of Her Unsatisfactory Job Performance, Not Her FMLA Leave.

TCU's decision to discharge Holland was not motivated by Holland's leave in any way. ROA.597, 620. Gooding supported Holland's decision to take time off

for self-care, as Holland admits. ROA.525, 539, 596, 571-72. And Holland had taken FMLA leave in 2022 and returned to work, in her words, with "no issue." ROA.554, 549, 528, 595, 616. Further, another OIE staff member who also reported to Gooding, Dr. Andrea McDew, took FMLA leave in the months preceding Holland's 2023 leave period and also returned to work without issue. ROA.597-98, 620, 552-53. Gooding's staffing decision was based solely on legitimate, nonretaliatory, and nondiscriminatory concerns she held regarding Holland's performance and her negative effect on the OIE environment. ROA.596-97, 492, 506-07, 509-511, 514, 521, 559-60. Holland even admitted she has no evidence TCU's decision to separate her employment was discriminatory or retaliatory. ROA.554-557.

## B.    Relevant Procedural History.

Holland filed this case on March 28, 2024. ROA.009. In her Complaint, she alleges one count of "Family and Medical Leave Act (FMLA) discrimination, interference and retaliation." ROA.016. She contended that TCU interfered with her "exercise of her FMLA rights by terminating her employment immediately after her return from FMLA leave." ROA.016. Equitable estoppel is not raised in the Complaint, by name or elements.[1] ROA.009-018.

---

[1] *Cf.* Appellant's Br. at pgs. 4, 9, 27, referencing "Holland's Claim of Equitable Estoppel."

Each party filed a motion for summary judgment. ROA.193-213, 436-468. Holland's response to TCU's motion was untimely filed, and some of the evidence she submitted was unauthenticated or otherwise inadmissible, so TCU moved to strike the response and the objectionable evidence. ROA.934-954. Holland also submitted unauthenticated or otherwise inadmissible evidence in support of her own motion for summary judgment briefing, including additional evidence she improperly filed without leave alongside her reply brief. TCU moved to strike that, too. ROA.983-1002.

Upon completion of the briefing of the foregoing motions, the District Court issued its Memorandum Opinion and Order granting summary judgment in favor of TCU on all of Holland's claims and entered its Final Judgment dismissing the case with prejudice. ROA.1052-1061. This appeal followed.

## C.    Ruling Presented for Review.

The District Court held Holland's FMLA claims fail as a matter of law because Holland was not entitled to FMLA leave. ROA.1056. Observing that (as applied to the facts of this case) FMLA leave is available only to employees who suffer from a "serious health condition," the District Court explained that "the record evidence is rife with admissions that negate the existence of a serious health condition under the FMLA." ROA.1056-1058. The District Court correctly applied the definition of "serious health condition" – including 'incapacity' as defined by 29

11

C.F.R. § 825.113(b) – in its analysis and held that Holland did not meet the requirements for having a serious health condition because she did not receive inpatient care and there is no indication her mental health caused her to be incapacitated during the leave period. ROA.1056-1058. In pertinent part, the District Court noted:

> Plaintiff in her deposition explicitly denied receiving inpatient care. […] Likewise, there is no indication Plaintiff was incapacitated during the leave period. In her deposition, Plaintiff responded 'No,' when asked whether she was 'incapacitated in any way.' In fact, Plaintiff testified she was able to drive, care for herself, leave her house, go on walks, and maintain normal social behavior.
>
> Further, Plaintiff was able to perform her job duties despite her alleged mental health issues. According to Plaintiff, she 'was able to do [her] job. It wasn't stopping [her]… [her] mental health didn't stop [her] from doing the actual job.' When asked in her deposition whether she 'could have continued to perform the duties of [her] actual job but it was better for [her] to take time off for [her] mental health,' Plaintiff responded 'Yes.' Tellingly, Dr. Chism, confirmed Plaintiff's ability to work, stating 'Ms. Holland never was not able to do her job.'"

ROA.1057-1058. (internal citations omitted) (brackets in original). The District Court also held that the doctrine of equitable estoppel cannot salvage Holland's claims because she did not rely on TCU's representation of leave entitlement to her detriment. ROA.1059.

### III.  SUMMARY OF ARGUMENT

The District Court did not err in granting summary judgment in favor of TCU on Holland's FMLA claims for the following reasons:

1.    **Holland Was Not Entitled to FMLA Leave.**

As the District Court correctly concluded, Holland was not entitled to FMLA leave and therefore her FMLA claims fail as a matter of law. Under the FMLA, an eligible employee is entitled to protected leave for the employee's own serious health condition only if a "serious health condition [] makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" involves either inpatient care or continuing treatment provided by a health care provider. 29 C.F.R. § 825.113(a). To qualify as receiving "continuing treatment," an employee must experience "incapacity." 29 C.F.R. § 825.115; 29 C.F.R. § 825.113(b). Per Holland's own admission, she was able to perform the functions of her position (an attestation echoed by her healthcare provider). Moreover, Holland explicitly testified that she did not receive inpatient care and was not incapacitated, and she presents no evidence to the contrary. Without a shred of evidence in the record of these statutorily required elements, Holland's FMLA claims cannot stand.

On appeal, Holland argues for the first time that she suffered from a "chronic serious health condition" as defined under 29 C.F.R. § 825.115(c) and alleges that she was diagnosed with depression. Appellant's Br. ¶¶ 5.12-5.16. Because she did not raise this argument to the District Court, she cannot do so now. Even if the Court were to consider it, though, it would fail. A "chronic serious health condition" still

requires incapacity, and there is still no evidence of incapacity in the record. §825.115(c).

The doctrine of equitable estoppel cannot save Holland's claims. She expressly testified that she did not detrimentally rely on any representation that she was entitled to FMLA leave. Holland's appellate argument on this point is obscure and without merit. This Court has upheld grants of summary judgment on FMLA claims in comparable cases in which the plaintiff did not present evidence of detrimental reliance. The Court should not depart from this precedent.

## 2. TCU Did Not Interfere with Holland's Leave or Discriminate/Retaliate Against Her Because of Her Leave.

Appropriately, the District Court's analysis concluded upon its determination that Holland was not entitled to FMLA leave. ROA.1059. Summary judgment in favor of TCU is warranted on that basis alone. However, summary judgment is appropriate on other grounds, too. As to interference, Holland presents no genuine issue of material fact countering TCU's position that she received all of the leave she requested. As to discrimination and retaliation, there is not sufficient evidence to raise a triable fact dispute about whether TCU took any adverse action against her because of her leave.[2] TCU has articulated a legitimate, non-discriminatory, non-

---

[2] While a claim for FMLA discrimination is technically distinct from a claim for FMLA retaliation, the two are substantively identical, and courts treat them interchangeably. *See Bocalbos v. Nat'l Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). Thus, this Court should analyze Holland's FMLA retaliation and discrimination claims as a single cause of action. *See Martin v. Penske Logistics,*

retaliatory reasons for its discharge decision: Holland's unsatisfactory job performance, including as revealed during her 2023 leave. ROA.594-97, 618-620, 492, 506-07, 509-511, 514, 521, 559-60. Holland did not and cannot meet her burden to show that TCU's proffered reason was pretext, despite her attempt to do so by presenting improper evidence –which TCU objected to and moved to strike from the record – at the trial court level. ROA.934-954. Holland's claims cannot survive summary judgment.

## IV.  ARGUMENTS AND AUTHORITIES

### A.     Standard of Review.

This Court reviews summary judgment rulings de novo. *Lawrence v. Fed. Home Loan Mortgage Corp.*, 808 F.3d 670, 673 (5th Cir. 2015). "Summary judgment is required 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cit. 1998); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (a plaintiff must set forth specific facts showing there is a genuine issue for

_____

*LLC*, No. 3:23-cv-0574-B, 2024 U.S. Dist. LEXIS 98829, at *9 n.1 (N.D. Tex. June 24, 2024) (same).

trial). The non-moving party cannot defeat summary judgment by offering "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014) (citations and internal quotation marks omitted). Further, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014); *see also Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (explaining unsubstantiated assertions are not competent summary judgment evidence). Assertions of ultimate facts without supporting specifics will not suffice to avoid summary judgment. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). If the non-movant is unable to make the required showing, the Court must grant summary judgment. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (per curiam). This Court "may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 (5th Cir. 2016) (citation omitted).

**B.      The District Court Correctly Held That Holland Was Not Entitled to FMLA Leave and Therefore Cannot Succeed on Any FMLA Claim.**

To make a prima facie case of FMLA interference, discrimination, or retaliation, a plaintiff must demonstrate that she was entitled to leave. *See Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017) (listing required elements of FMLA interference); *Bocalbos v. Nat's W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998) (listing required elements of discrimination or retaliation under the FMLA). Holland was not entitled to FMLA leave. Her claims cannot succeed.

**1.      Standard of Analysis.**

Under the FMLA, an eligible employee is entitled to protected leave only if "a serious health condition . . . makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The Department of Labor has promulgated regulations that clarify this rule and define certain terms, including the phrase "serious health condition," which is critical to Holland's appeal. The regulations explain that a "serious health condition" can be either of two different things.

First, a serious health condition can be "an illness, injury, impairment, or physical or mental condition that involves inpatient care." 29 C.F.R. § 825.113(a). "Inpatient care" can be either "an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity . . . , or any subsequent treatment in connection with such inpatient care." *Id*. § 825.114. The term

17

"incapacity," in turn, means "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." *Id*. § 825.113(b); *see Mauder v Metro Transit*, 446 F.3d 574, 579-80 (5th Cir. 2006) (explaining that serious health condition involving continuing treatment by healthcare provider necessarily involves period of incapacity).

Second, "continuing treatment by a health care provider as defined in § 825.115" may also qualify as a serious health condition for FMLA purposes. 29 C.F.R. § 825.113(a). The regulations provide several categories of situations that meet this definition, including "incapacity and treatment," "pregnancy or prenatal care," and "chronic conditions." *Id*. Critically, each and every one of these categories involves a period of incapacity. *Id*. Thus, incapacity is a precondition to any definition of "serious health condition."

Additionally, some situations may give rise to FMLA coverage by virtue of equitable estoppel. *See Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 359 (5th Cir. 2006) ("[A]n employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an 'eligible employee' and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment.").

**2.    Holland's Testimony Proves Incontrovertibly That She Did Not Receive Inpatient Care and Was Not Incapacitated.**

Holland contends that she was entitled to FMLA leave related to her mental health. ROA.526-527, 570. Her own testimony, however, is fatal to this assertion. First, she expressly denied inpatient care. ROA.529. Thus, her mental health incontrovertibly did not qualify as a serious health condition under the "inpatient care" definition of that term. *See* 29 C.F.R. § 825.114.

Moreover, Holland's own testimony confirms that she was not incapacitated. ROA.534. Tellingly, she does not even allege that she was unable to perform the functions of her position. *See* 29 U.S.C. § 2612(a)(1)(D). To the contrary, she unreservedly testified she was able to perform her job duties despite her alleged health condition: "[] *I was able to do my job. It wasn't stopping me. I mean, my mental health didn't stop me from doing the actual job*." ROA.535 (emphasis added). Holland said she was able to perform her job duties in the weeks leading up to her leave and could have continued to perform the duties of her job, but she took leave "to reset" so she "could be a better person." ROA.532-35, 544. Dr. Chism agrees that Holland was able to perform the duties of her job for the duration of her leave: "*Ms. Holland never was not able to do her job*." ROA.587 (emphasis added), 744-45.

This evidence is enough on its own to defeat Holland's claims. Dismissal is appropriate where a FMLA claimant is capable of performing their job. *See Murray*

*v. Red Kap Indus., Inc.,* 124 F.3d 695, 698 (5th Cir. 1997) (affirming judgment as matter of law for defendant employer in FMLA suit where there was no evidence the employee was "unable to work" during absence and indicating plaintiff must show that her absence from work "was *necessary*") (emphasis in original); *Dean v. Methodist Hosps. of Dall., Inc.,* No. 98-11498, 1999 U.S. App. LEXIS 39142, at *7 (5th Cir. 1999) (affirming summary judgment and noting that once plaintiff was able to perform the functions of her position, she was not entitled to FMLA leave); *Cole v. Sisters of Charity of the Incarnate Word*, 79 F. Supp. 2d 668 (E.D. Tex. 1999) (granting summary judgment dismissal of FMLA claim, stating that "[w]hile the plaintiff in the present case suffered stress and ultimately a day of illness, there is no evidence that she was unable to perform the functions of the job."); *Blakley v. Golabs, Inc*., No. 3:21-cv-2422-L, 2022 U.S. Dist. LEXIS 154936, at *19-20 (N.D. Tex. July 8, 2022) (dismissing FMLA claims where "[d]espite Plaintiff[]'s anxiety/depression," he was capable of performing his job); *Johnson v. Dallas ISD*, No. 3:08-CV-2215-O, 2011 U.S. Dist. LEXIS 172009, *16 (N.D. Tex. March 7, 2011) (granting judgment as a matter of law, "The evidence establishes that Plaintiff suffered from stress, anxiety, and some level of pain. To qualify for FMLA leave, these conditions must have incapacitated Plaintiff for at least three days. There is legally insufficient evidence that these conditions rendered Plaintiff unable to perform the functions of his job.").

Holland's arguments on appeal cannot overcome her and Dr. Chism's fatal admissions. Instead, she asserts that the District Court applied an improperly narrow definition of "incapacity." Appellant Br. ¶¶ 5.12-5.16. The District Court's opinion belies this criticism. It includes the full statutory definition of "incapacity" and highlights evidence beyond Holland's ability to perform the functions of her job. ROA.1052-1060. Holland's attack on the District Court's analysis is baseless.

Though her argument is not entirely clear, TCU understands her to assert that the District Court did not properly consider whether she could "attend school or perform other regular daily activities." Appellant's Br. ¶ 5.12. This argument gains her nothing, however, since the record contains no evidence that she was impaired from doing either of these things. Indeed, she admitted that she could perform regular daily activities, including caring for herself, leaving the house, driving, going on walks, maintaining normal social behavior, communicating with friends, eating, drinking, showering, sleeping, and performing work for at least one of her side businesses. ROA.474, 535-36, 539-40, 542-44, 715. Nothing in the record contradicts these admissions.

### 3. Holland's New Argument That She Had a Serious Health Condition Is Both Waived and Unsupported by the Record.

On appeal, Holland newly argues that she suffered from a "chronic serious health condition" as defined under 29 C.F.R. § 825.115(c), namely, "chronic depression." Appellant's Br. ¶ 5.16. Because she did not raise this argument before

the District Court, she has waived it. ROA.193-213, 807-816, 857-875. *See AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) ("[A]rguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate 'extraordinary circumstances.'" (citations omitted)); *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." (internal citations and quotation omitted)).

Even if the Court were to consider this new argument, it would not change the result. First, Dr. Chism did not diagnose Holland with depression. Rather, he evaluated her symptoms and suggested she see another doctor to obtain a diagnosis. ROA. 586, 588. Holland admits that no other doctor diagnosed her with depression and offers no evidence to demonstrate such a diagnosis. ROA.476. *See Spindle v. CKJ Trucking, LP*, 2020 WL 1283519 (E.D. Tex. March 18, 2020) (stating plaintiff's own recounting of his medical diagnoses, offered for proof of same, constitutes inadmissible hearsay). Additionally, the record does not support Holland's new assertion of "uncontrollable weeping and crying spells." Appellant's Br. §5.08. Instead, it reflects Holland cried "very sporadic[ally]." ROA.474-75. Holland presents no supporting evidence or authority to demonstrate incapacity related thereto. A "chronic serious health condition" is defined, in part, as "[a]ny

period of incapacity or treatment for such incapacity due to a chronic serious health condition." *See* 29 C.F.R. § 825.115(c). Holland did not cite this regulatory language in her brief, and she cannot meet its conditions because, again, the record is devoid of evidence that she was incapacitated, and she has testified otherwise. ROA.534, 474. Briefly, the *Ladner v. Hancock Medical Center* case cited by Holland involves critically different facts. 299 F. App'x 380 (5th Cir. 2008); Appellant's Br. ¶¶ 5.15-5.16. Most importantly, Ladner presented evidence "sufficient to show that [her son with chronic asthma] was incapacitated … and was unable to perform his regular daily activities". *Id*. at 381. By contrast, Holland presents no such evidence, and her testimony demonstrates that she was neither incapacitated or unable to perform her regular daily activities. ROA.534, 539-540, 474.

Holland also newly argues that an employee's ability to perform some work functions does not automatically disqualify them from FMLA protection if their condition "substantially limits their ability to perform the full range of their duties". Appellant's Br. ¶ 5.17. But Holland presents no evidence indicating that she was substantially limited in her ability to perform her full range of duties. To the extent it bears noting, her brief's citation of *Caldwell v. KHOU-TV*, 850 F.3d 237 (5th Cir. 2017) is inapposite because the *Caldwell* opinion does not address this issue. None of Holland's new arguments about her purported entitlement to FMLA leave raise a fact issue sufficient to evade summary judgment.

### 4. The Doctrine of Equitable Estoppel Is Inapplicable.

On appeal, Holland alleges the District Court erred by granting summary judgment on her "claim" of equitable estoppel. Appellant's Br. ¶¶ 5.29-5.30. However, no such claim exists: her Complaint alleges only violation of the FMLA. ROA.009-018. TCU understands Holland to argue that the District Court should have equitably estopped TCU from asserting that she was not covered by the FMLA. She is wrong.

In *Minard v. ITC Deltacom Commc'n, Inc*., this Court held that equitable estoppel may apply if an employer erroneously represents to an employee that the employee is entitled to FMLA leave and has reason to believe the employee will rely on that statement. 447 F.3d at 359. In such cases, the employer "may be estopped to assert a defense of non-coverage if the employee reasonably relies on that representation and takes action thereon to her detriment." For equitable estoppel to apply, Holland must show that she would not have taken FMLA leave but for the employer's misrepresentation. *See id*. She cannot.

**Holland testified she would have taken the full amount of leave she requested under the FMLA, regardless of whether TCU approved her FMLA request.** ROA.536. Per Holland, she had enough vacation and sick time accrued to cover the entire time period that she would have used if her request had been denied. ROA.536. This admission is fatal because, no matter what TCU represented to her

about her FMLA eligibility, she would still have taken the same amount of leave. *See* ROA.1059. Thus, she cannot demonstrate detrimental reliance on any erroneous representations about FMLA entitlement. *See Durose v. Grand Casino of Miss., Inc.*, 251 F. App'x 886, 890 (5th Cir. 2007) (distinguishing *Minard* and upholding dismissal of FMLA claims where plaintiff did not present evidence of detrimental reliance); *see also Redoux v. Via Metro. Transit*, No. SA-08-CA-799-OG, 2009 U.S. Dist. LEXIS 136783, at *3 (W.D. Tex. July 30, 2009) (granting summary judgment on FMLA claim and rejecting plaintiff's "bare assertion" that equitable estoppel should apply due, in part, to lack of evidence of detrimental reliance). For the same reasons, Holland's "claim of equitable estoppel" – her first mention of equitable estoppel in dispositive briefing in this matter – also fails. Summary judgment on all of Holland's FMLA claims is appropriate.

## C.    TCU Did Not Interfere with Holland's FMLA Leave Because It Is Undisputed That She Received All of the Leave She Requested.

As demonstrated above, Holland was not entitled to leave under the FMLA and, thus, cannot properly sustain FMLA violation claims. Summary judgment should be affirmed on that basis alone. However, the Court may affirm the District Court's dismissal of Holland's FMLA interference claim on an independent basis: she has not and cannot meet her burden to state a prima facie case. Department of Labor regulations provide that interference with the exercise of an employee's rights includes refusing to authorize FMLA leave and discouraging employees from using

such leave. 29 C.F.R. § 825.220(b); *Bell v. Dallas Cnty*., 432 Fed. App'x 330, 334 (5th Cir. 2011) (per curiam) (quoting same). Additionally, a plaintiff must show that the alleged interference prejudiced her. *See McCollum v. Puckett Mach. Co*., 628 F. App'x 225, *4 (5th Cir. 2015) (per curiam) (citing *Lanier v. Univ. of Tex. Sw. Med. Ctr*., 527 F. App'x 312, 316 (5th Cir. 2013) (per curiam)) (holding prima facie requirement for FMLA interference claim includes prejudice to plaintiff).

Holland makes no such claims: she does not argue that TCU refused to authorize her leave or discouraged her from taking it. Rather, the record demonstrates that, as Holland admitted, Gooding supported Holland's time away from work and Holland received all of the leave she requested. ROA.525, 539, 571-72, 596, 722. She contends in her brief that she was assigned work while on leave, but she relies entirely on a single email chain in which TCU asked her to clarify the status or location of certain work items. Appellant's Br. ¶ 5.18. *See* ROA.224-25. This sort of de minimis contact does not amount to FMLA interference. *See Lopez v. Tex. Christian Univ*., No. 4:22-cv-00171-O, 2022 U.S. Dist. LEXIS 142304, at *5-7 (N.D. Tex. Aug. 10, 2022) (O'Connor, J.) (internal citations omitted) (same). In *Park v. Direct Energy GP, L.L.C.*, this Court rejected an argument similar to Holland's, noting that, as here, "there's no evidence that [the employer] required [the plaintiff] to work during his time off as a condition of continued employment." 832 F. App'x 288, 294 (5th Cir. 2020). *See also Massey-Diez v. Univ. of Iowa Cmty.*

*Med. Servs., Inc.*, 826 F.3d 1149, 1158-59 (8th Cir. 2016) (explaining that "receiving nondisruptive communications such as short phone calls requesting the employee to pass on institutional knowledge or property as a professional courtesy" does not amount to evidence of interference sufficient to survive summary judgment) (citing cases from several Courts of Appeals). Holland has pointed to no evidence, nor is there any, that TCU imposed any such condition on Holland. Indeed, Holland affirmatively testified she did not perform any work for TCU while on leave. ROA.542. Thus, there is no genuine issue of material fact with relation to Holland's FMLA interference claim, and summary judgment is warranted.

**D.    Holland's Claim of FMLA Discrimination and Retaliation Fails Because She Cannot Establish a Causal Connection or Demonstrate Pretext.**

To make a prima facie case for FMLA retaliation, Holland must show: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either that (3a) she was treated less favorably than an employee who had not requested leave under the FMLA, or (3b) the adverse decision was made because she took FMLA leave. *See Chaffin v. John H. Carter Co., Inc*., 179 F.3d 316, 320 (5th Cir. 1999). If Holland sets forth her prima facie case, the burden then shifts to TCU to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the employment action. *Hunt v. Rapides Healthcare Sys., LLC,* 277 F.3d 757, 768 (5th Cir. 2001). This burden is one of production, not persuasion; it can involve no credibility assessment. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142

(2000). If TCU can articulate such a reason, the burden shifts back to Holland to show by a preponderance of the evidence that TCU's reason is a pretext for retaliation. *See Hunt* at 768.

Holland cannot meet her burden. There is no evidence of a retaliatory motive. Indeed, Holland repeatedly testified she does not know why she was terminated. ROA.550-51, 555-56. She admitted that the decisionmaker, Gooding, was supportive of Holland's decision to take leave. ROA.525, 539, 571-72. Because Holland cannot establish a causal connection between her leave and her discharge, the Court's analysis need proceed no further. *See*, e.g., *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 402 (5th Cir. 2012) (affirming dismissal of FMLA retaliation claim because plaintiff's speculation failed to establish a causal connection between his adverse employment action and his protected leave) (citing *Mauder*, 446 F.3d at 584 (discounting plaintiff's conclusory allegations)).

Even if Holland could establish a prima facie case of FMLA retaliation, TCU had legitimate, non-discriminatory and non-retaliatory reasons for terminating her employment. As described in detail above, TCU terminated Holland for her unsatisfactory job performance, including her perceived negative presence in the OIE department. ROA.595-597, 559-560, 618-620. In addition to her own concerns regarding Holland's performance over a sustained period, Gooding consistently received negative feedback about Holland from various other university personnel.

ROA. 594, 512, 514. While Holland was on leave, Gooding learned she failed to conduct a thorough investigation of a staff member with significant impact to TCU. ROA.596, 619. Gooding also learned Holland had not completed key work she should have with regard to another case. ROA.596, 619. Additionally, Gooding observed a marked improvement in the OIE office environment during Holland's leave and concluded and received feedback that it was due to Holland's absence. ROA.596-97, 620. Compellingly, an OIE staff member told Gooding that she didn't know if she could "take it" when Gooding returned to work because of the stress she felt as a result of Holland's bullying, toxic tactics in the workplace. ROA.596-97. Due to these facts, Gooding decided to discharge Holland from employment. ROA.597. It is well-established that poor performance is a legitimate, non-discriminatory (and, by extension, non-retaliatory) reason for terminating an employee's employment. "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *see also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (same, also noting evidentiary disputes concerning job performance are insufficient to show that a proffered justification is unworthy of credence).

Holland cannot demonstrate pretext. To start with, it is undisputed that TCU approved a period of FMLA leave for Holland in 2022 (wrist surgery), which she

29

exercised in full and from which she returned to work from without issue. ROA.528, 554, 616. *See Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 212 (5th Cir. 2015) (per curiam) (finding employer's past approvals of FMLA leave to be evidence of non-pretextual, non-discriminatory termination). Gooding supervised Holland at that time, too. ROA.593. It strains credulity to argue TCU readily permitted Holland to take the full amount of time away from work she sought in 2022 and again in 2023, but then arbitrarily discharged Holland upon her return to work without restrictions. Holland acknowledged the nonsensical nature of this theory in her deposition:

> Q: …given your first FMLA leave you exercised your FMLA rights and you returned to work for TCU without any issue, what would make your second FMLA leave any different? Like, why would it be handled differently?
>
> A: I'm not sure.

ROA.554-555.

Holland points to the temporal proximity between her return from leave and her termination to demonstrate pretext, but it is not enough. "Temporal proximity gets [a plaintiff] through [her] prima facie case, but does not, on its own, establish that the company's stated explanation for [her] firing was mere pretext." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). "At the pretext stage, the Supreme Court [] . . . requires a showing of but-for causation, which requires more than mere temporal proximity." *Id*. at 243-44 (citing *Univ. of Tex. Sw. Med. Ctr. v.*

*Nassar*, 570 U.S. 338, 133 (2013)); *see Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013). To bolster her argument, Holland puzzlingly alleges TCU's separation offer to Holland also evidences pretext. Appellant's Br. ¶ 5.28. She offers no explanation for this position, much less any legal authority to substantiate it, and she is incorrect. She also cites an unauthenticated, unsworn, altered document containing handwritten markups that she inserted on the document outside of the discovery period, which TCU moved the District Court to strike and disregard. Appellant's Br. ¶5.09. ROA.934-954. Holland asserts this document is "defamatory and malicious" but provides no specific facts to substantiate her assertion. Appellant's Br. ¶ 5.27. Instead, she complains that she never saw the draft performance evaluation mentioned therein and that many of the points in the evaluation are "unsubstantiated charges, raising numerous questions of fact which only a jury should determine." *Id*. Not so. TCU's burden is one of production, not persuasion, and it has met that burden. *Sanderson Plumbing*, 530 U.S. at 142. The burden has thus shifted back to Holland to show by a preponderance of the evidence that the proffered reasons are a pretext for retaliation. *See Hunt* at 768. She has not done so.

While the party opposing summary judgment is "entitled to have reasonable inferences drawn in [its] favor, the inferences to be drawn must be rational and reasonable, not idle, speculative, or conjectural." *Brinsdon v. McAllen Indep. Sch. Dist*., 863 F.3d 338, 349 (5th Cir. 2017) (citing *Unida v. Levi Strauss & Co*., 986

F.2d 970, 980 (5th Cir. 1993)). Notably, as Holland herself argued, the drafter of the document (Gooding) "encouraged [Holland] to take FMLA leave" on multiple instances in 2023. Appellant's Br. ¶ 5.27. ROA.525, 539. Holland does not attempt to reconcile her argument that Gooding was supportive of her leave with her argument that Gooding was maliciously resentful about her leave, nor does she attempt to set forth a rational basis for her wild speculation. *See, e.g.*, ROA.554-55. Holland's causation argument thus rests entirely on bald assertions. "Needless to say, unsubstantiated assertions are not competent summary judgment evidence." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Further, the Court should find that the "evidence" Holland proffers in support of her pretext argument is inadmissible and too attenuated. Evidence that raises only "an attenuated possibility that a jury would infer a discriminatory motive" is insufficient. *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 814 (5th Cir. 1991).

Holland has not raised a triable fact issue about whether TCU's articulated reasons for discharge are a pretext for retaliation. *See Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 332-22 (5th Cir 2004). And she cannot. An explanation is pretextual when it is "'unworthy of credence'—i.e., when it 'is not the real reason for the adverse employment action.'" *Lindsey v. Bio-Medical Applications of La., L.L.C.*, 9 F.4th 317, 325 (5th Cir. 2021) (internal citation omitted). Holland cannot make this showing. She testified she does not know why she was terminated one

way or another. ROA. 550-51, 555-56. Further, the record forecloses her ability to demonstrate but-for causation. In fact, **Holland does not dispute the legitimacy of TCU's discharge reasons**. ROA.559-560, 491-492, 516-517, 565, 509-514, 593-596. She readily admits she and Gooding had very different approaches to work. ROA.484-485, 490. She even admitted she did not improve her communication with Gooding despite Gooding's clear instruction to do so. ROA.500. Further, she regards the persons with knowledge of her termination (namely, Sharon Gooding, OIE Director, and Yohna Chambers-Hastings, Vice Chancellor & Chief Human Resources Officer) as honest people. ROA.806. Consequently, she cannot credibly refute their explanation for the discharge is false or unworthy of credence.

At best, Holland only *speculates* she was terminated because she took FMLA leave; she readily admits she has no knowledge of the reason for her termination one way or the other. ROA.551, 554-557. Holland's conjecture is not sufficient evidence of a fact, much less "other significant evidence" of pretext. A plaintiff's subjective assertions are insufficient evidence of pretext. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2013) (plaintiff must produce evidence each of defendant's articulated reasons are "false or unworthy of credence"); *Owens v. Excel Mgmt. Servs., Inc.*, No. CIV A. 3:02-CV-0835, 2004 WL 358153, at *2 (N.D. Tex. Feb. 13, 2004) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence") (internal citation omitted).

Simply taking issue with TCU's decision-making or the motives behind it is not enough to establish pretext. *Goree v. Comm'n Lincoln Park. Det. Ctr.*, 437 F. App'x 329, 334 (5th Cir. 2011). Holland presents no evidence (because there is none) that discriminatory or retaliatory motives drove the decisions. *McDaniel v. Nat'l R.R. Passenger Corp.*, 705 F. App'x 240, 246 (5th Cir. 2017) ("Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor ... to transform the courts into personnel managers.'); *Chapman v. Dallas Morning News, L.P.*, No. CIV.A.3:06-CV-2211B, 2008 WL 2185389, at *8 (N.D. Tex. May 27, 2008) ("[C]ourts, which are ill-suited to make personnel decisions, are loathe to substitute their views for that of individuals with the requisite training and experience who are charged with those decisions."). Holland's contention that she was fired for taking leave, based only on her conclusory and subjective guesswork, cannot rebut TCU's legitimate, non-discriminatory, and non-retaliatory reason for its decision to terminate her employment, which it made pursuant to Gooding's careful considerations. ROA.596-97, 618-620. Because Holland cannot raise a genuine issue of material fact to rebut TCU's legitimate, non-retaliatory business decision, her FMLA discrimination/retaliation claim must be dismissed.

## V.  CONCLUSION

For the foregoing reasons, TCU respectfully requests that the Court affirm the

District Court's ruling in all respects.

Respectfully submitted,

*/s/Molly Ann Lawrence*
Eva W. Turner
Texas State Bar No.
eva.turner@ogletree.com
Molly Ann Lawrence
Texas State Bar No. 24083365
mollyann.lawrence@ogletree.com

**Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.**
8117 Preston Road, Suite 500
Dallas, TX 75225-4324
Telephone: 214-987-3800
Facsimile:  214-987-3927

**Attorneys for Appellee**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 16, 2025, I electronically filed the foregoing using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Molly Ann Lawrence*
Molly Ann Lawrence

**Attorney for Appellee**

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 8,003 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft 365 Version 2408 in Times New Roman 14-point font.

DATED:  July 16, 2025.                     */s/Molly Ann Lawrence*
                                           Molly Ann Lawrence

                                           **Attorney for Appellee**

**ADDENDUM 1**
**REGULATIONS CITED IN THE BRIEF**

Pursuant to Fed. R. App. P. 28(f), Defendant-Appellee files the following regulations cited in its principle brief to assist the Court's determination of the issues presented:

29 C.F.R. § 825.113 Serious health condition.

29 C.F.R. § 825.114 Inpatient care.

29 C.F.R. § 825.115 Continuing treatment.

29 C.F.R. § 825.220 Protection for employees who request leave or otherwise assert FMLA rights.

This content is from the eCFR and is authoritative but unofficial.

📅  Displaying the eCFR in effect on 5/02/2023. ⓘ

**Title 29 —Labor**
**Subtitle B —Regulations Relating to Labor**
**Chapter V —Wage and Hour Division, Department of Labor**
**Subchapter C —Other Laws**
**Part 825 —The Family and Medical Leave Act of 1993**
**Subpart A —Coverage Under the Family and Medical Leave Act**

 **§ 825.113 Serious health condition.**

(a)   For purposes of FMLA, *serious health condition* entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115.

(b)   The term *incapacity* means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom.

(c)   The term treatment includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations. A regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen). A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave.

(d)   Conditions for which cosmetic treatments are administered (such as most treatments for acne or plastic surgery) are not serious health conditions unless inpatient hospital care is required or unless complications develop. Ordinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc., are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave. Restorative dental or plastic surgery after an injury or removal of cancerous growths are serious health conditions provided all the other conditions of this regulation are met. Mental illness or allergies may be serious health conditions, but only if all the conditions of this section are met.

7/16/25, 12:19 AM    Case: 25-10567    Document: 19    Page: 48    Date Filed: 07/16/2025

This content is from the eCFR and is authoritative but unofficial.

 Displaying the eCFR in effect on 5/02/2023. ⓘ

**Title 29 —Labor**
**Subtitle B —Regulations Relating to Labor**
**Chapter V —Wage and Hour Division, Department of Labor**
**Subchapter C —Other Laws**
**Part 825 —The Family and Medical Leave Act of 1993**
**Subpart A —Coverage Under the Family and Medical Leave Act**

## § 825.114 Inpatient care.

Inpatient care means an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity as defined in § 825.113(b), or any subsequent treatment in connection with such inpatient care.

7/16/25, 12:18 AM    Case: 25-10567    Document 19    Page: 49    Date Filed: 07/16/2025

This content is from the eCFR and is authoritative but unofficial.

 Displaying the eCFR in effect on 5/02/2023. ⓘ

**Title 29 —Labor**
**Subtitle B —Regulations Relating to Labor**
**Chapter V —Wage and Hour Division, Department of Labor**
**Subchapter C —Other Laws**
**Part 825 —The Family and Medical Leave Act of 1993**
**Subpart A —Coverage Under the Family and Medical Leave Act**

## § 825.115 Continuing treatment.

A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(a) *Incapacity and treatment.* A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

    (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

    (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

    (3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.

    (4) Whether additional treatment visits or a regimen of continuing treatment is necessary within the 30-day period shall be determined by the health care provider.

    (5) The term *extenuating circumstances* in paragraph (a)(1) of this section means circumstances beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider. Whether a given set of circumstances are extenuating depends on the facts. For example, extenuating circumstances exist if a health care provider determines that a second in-person visit is needed within the 30-day period, but the health care provider does not have any available appointments during that time period.

(b) *Pregnancy or prenatal care.* Any period of incapacity due to pregnancy, or for prenatal care. *See also* § 825.120.

(c) *Chronic conditions.* Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

    (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

    (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

    (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

(d) *Permanent or long-term conditions.* A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

(e) *Conditions requiring multiple treatments.* Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, for:

    (1) Restorative surgery after an accident or other injury; or

    (2) A condition that would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), or kidney disease (dialysis).

41

(f) Absences attributable to incapacity under paragraph (b) or (c) of this section qualify for FMLA leave even though the employee or the covered family member does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days. For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack or because the employee's health care provider has advised the employee to stay home when the pollen count exceeds a certain level. An employee who is pregnant may be unable to report to work because of severe morning sickness.

This content is from the eCFR and is authoritative but unofficial.

 Displaying the eCFR in effect on 5/02/2023. ⓘ

**Title 29 —Labor**
**Subtitle B —Regulations Relating to Labor**
**Chapter V —Wage and Hour Division, Department of Labor**
**Subchapter C —Other Laws**
**Part 825 —The Family and Medical Leave Act of 1993**
**Subpart B —Employee Leave Entitlements Under the Family and Medical Leave Act**

## § 825.220 Protection for employees who request leave or otherwise assert FMLA rights.

(a) The FMLA prohibits interference with an employee's rights under the law, and with legal proceedings or inquiries relating to an employee's rights. More specifically, the law contains the following employee protections:

  (1) An employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act.

  (2) An employer is prohibited from discharging or in any other way discriminating against any person (whether or not an employee) for opposing or complaining about any unlawful practice under the Act.

  (3) All persons (whether or not employers) are prohibited from discharging or in any other way discriminating against any person (whether or not an employee) because that person has—

    (i) Filed any charge, or has instituted (or caused to be instituted) any proceeding under or related to this Act;

    (ii) Given, or is about to give, any information in connection with an inquiry or proceeding relating to a right under this Act;

    (iii) Testified, or is about to testify, in any inquiry or proceeding relating to a right under this Act.

(b) Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act. An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered. *See* § 825.400(c). Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA, for example:

  (1) Transferring employees from one worksite to another for the purpose of reducing worksites, or to keep worksites, below the 50-employee threshold for employee eligibility under the Act;

  (2) Changing the essential functions of the job in order to preclude the taking of leave;

  (3) Reducing hours available to work in order to avoid employee eligibility.

(c) The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies. *See* § 825.215.

(d) Employees cannot waive, nor may employers induce employees to waive, their prospective rights under FMLA. For example, employees (or their collective bargaining representatives) cannot trade off the right to take FMLA leave against some other benefit offered by the employer. This does not prevent the settlement or release of FMLA claims by employees based on past employer conduct without the approval of the Department of Labor or a court. Nor does it prevent an employee's voluntary and uncoerced acceptance (not as a condition of employment) of a light duty assignment while recovering from a serious health condition. *See* § 825.702(d). An employee's acceptance of such light duty assignment does not constitute a waiver of the employee's prospective rights, including the right to be restored to the same position the employee held at the time the employee's FMLA leave commenced or to an equivalent position. The employee's right to restoration, however, ceases at the end of the applicable 12-month FMLA leave year.

43

29 CFR 825.220 (up to date as of 5/01/2023) Protection for employees who request leave or otherwise assert FMLA rights.

(e) Individuals, and not merely employees, are protected from retaliation for opposing (e.g., filing a complaint about) any practice which is unlawful under the Act. They are similarly protected if they oppose any practice which they reasonably believe to be a violation of the Act or regulations.

44